## W. M. LITTLEFIELD v. J. T. TINSLEY AND ANOTHER.

As long as a contract for the sale of lands is *in fieri*, the vendor, to enforce payment of the purchase money, must show, when the vendee relies upon defect of title, that the vendee had purchased at his own risk. In such a case, when the vendor's title is doubtful, a specific performance will not be decreed.

The act of May 11, 1846, to organize Probate Courts, did not in express terms authorize those courts to order a sale of real estate for partition; but the 24th section of that act, (Hart. Dig., sec. 1106,) directing the distribution of the estate to the parties entitled thereto, did in effect confer such power upon the Probate Courts, especially when a distribution could not be otherwise made.

But before an order of sale of real estate or slaves could be made for partition under that enactment, it was necessary that notice should be given to the heirs; by personal service if they were residents of the State, or by publication if they were non-residents.

Such notice was essential to the jurisdiction of the Probate Court to order the sale; and to the validity of the sale itself.

Where the record of the proceedings of a Probate Court, at its May Term, 1848, showed an order of sale of lands for partition to have been granted without such notice, the record was not admissible as evidence of title under the sale; nor was the title bond of the administrator to the purchaser at the sale admissible.

When the sale had been properly ordered by the court, the purchaser thereat acquired but a mere equity until the sale was confirmed by the court; and unless the sale was confirmed within a reasonable time, it vested in the purchaser no interest in the land.

A vendor, who is bound for the conveyance of a good title to land, cannot insist upon his vendee's acceptance of a deed from him, until he obtains such title in himself; the possession of equities which would enable him to procure a good title by decree, will not suffice.

See this case as to the proper judgment to be rendered, when it appears that the vendor of land cannot make title, and the vendee has paid part of the purchase money and made valuable improvements.

APPEAL from Gonzales. Tried below before the Hon. Fielding Jones.

For the main facts of this case, reference is made to the opinion, and to the report upon a former appeal in 22 Texas Reports, 259.

In his answer, the appellant, who was defendant below, alleged a payment by him of two hundred dollars upon the land, in part

consideration of which the note sued on was given. He further alleged and specified valuable improvements, worth some fourteen hundred and forty dollars, which he had made upon the land. For these sums, as also for the increased value of the land, he prayed judgment against the plaintiff in reconvention.

*Parker & Miller*, for appellant.

*Harwood & Mills*, for appellees.

MOORE, J. It was held in this case, when it was before the court on a former appeal, that the appellant should have been permitted to have sustained his answer by proof; and if he should do this, that he would be entitled to the relief asked by him, unless appellees should prove that the defects of title of which appellant complains were known to him at the time of his purchase, and it was understood that he should take such title as they could give. (22 Tex. R., 259.) And it has been frequently held by this court, "as long as the contract for the sale is *in fieri*," (as is the case here,) "the vendor, to enforce payment, should show, when the vendee relies upon defect of title, that the latter had purchased at his own risk." (Cooper v. Singleton, 19 Tex. R., 260; Hunt v. McReynolds, 20 Tex. R., 595; Id., 601; Saul v. Bradford, Id., 261.) Nor will a court of equity in such case decree a specific performance when the vendee's title is doubtful. (Rawle Cov. Title, 566.)

There was no effort on the part of the appellees, in the trial in the court below, to prove that appellant was cognizant of the defects he now charges upon their title at the time he purchased the land, in part consideration of which the note upon which they sue was given. But they insisted, and the court held, that their title was unobjectionable. And unless this is so, the judgment in their favor must necessarily be reversed. The appellees claim to have acquired title through a purchaser at a sale by the administrator of Kimber B. Lockhart, to whose estate the testimony shows the land previously belonged.

The facts in relation to the sale of the land by the administrator of Lockhart, and appellees' purchase of the title of the vendee

at the sheriff's sale, appear to be briefly as follows:   At the May Term of the Probate Court of Gonzales county, the administrator of said estate filed a petition praying for an order to sell the land belonging to said estate for the purpose of making partition of it among the heirs, it not being otherwise, as was alleged, susceptible of partition.   There was no exhibit of the condition of the estate filed by the administrator; nor is it shown of what the estate consisted, beyond the two tracts of land—one of three hundred and twenty, and the other of six hundred and forty acres—for which the order of sale was asked.   The petition states that there were six heirs, but it does not give their names or places of residence; though the statement of facts shows that the most, if not all of them resided in Gonzales county; and no notice was given to them of said application.   At the same term at which the petition was filed, the order of sale was granted, directing the sale on a credit of twelve months, and that a return thereof should be made to the court.   And on the 4th of July the administrator sold both of said tracts of land to Rollo M. Davis, for the sum of ninety-six dollars, for which he gave his note with security; and the administrator executed to him a bond for title upon the payment of the same.   The administrator failed, however, to make a report of the sale to the court, and the same was never confirmed by it.   For we think it very evident that the exhibit of the administrator made in 1849, in obedience to the order of the court requiring him to show cause why the administration should not be closed, and in which he states that the lands had been sold, without, however, giving the name of the purchaser or the amount for which they were sold, cannot be tortured, as the appellees insist, into a report of sales; and much less can the order of the court directing, as the law required, that this exhibit of the administrator should be recorded, be regarded as a confirmation of the sale.   With much more propriety might it be insisted that the subsequent reports of the administrator, in which he refers to the lands as if still belonging to the estate, which were also ordered to be recorded, are evidence that the sale of the land had not been confirmed, but on the contrary, had been set aside by the court.

The only additional facts that strengthen this title from the

administrator, are that he appears to have subsequently brought suit against the vendee, Davis, on the note given for the purchase money, and obtained a judgment against him for the same, on the 2d of February, 1850. And subsequently an execution was issued on this judgment, and said tract of six hundred and forty acres of land (of which the land sold to appellant is a part,) was levied upon and sold by the sheriff, as the property of said Davis, and appellees became the purchasers of the same. Many objections were taken by appellant to the admissibility of the transcript of the judgment, execution and sheriff's deed, upon which appellees rely to make out this link in their chain of title; but the view that we take of their effect, if in all respects final and correct, and of the proceedings in the Probate Court, to divest the title of said land out of Lockhart's estate, renders it unnecessary for us to consider them.

The act to organize the Probate Courts, of May 11th, 1846, no where in express terms authorizes the court to order a sale of real estate for the purposes of a partition; but there can be no doubt that the 24th section of said act, (Hart. Dig., art. 1106,) which authorizes the distribution of the property of estates to be made among the heirs, under the direction of the judge, must be construed as conferring this power especially when a distribution could not be otherwise made. But by this section it is expressly provided, as preliminary to the distribution of the estate, that notice shall be given as in section 17, (Hart. Dig., art. 1099,) which regulates the mode of proceeding to obtain an order of sale of land or negroes for the payment of debts. This section positively requires that notice shall be given to the heirs by personal service if residents of the State, and by publication if non-residents, before an order can be made for the sale of lands or negroes. We must conclude that the same regulations were intended to apply, where, as in this case, the application was for an order of sale for partition. It cannot, with any propriety, be insisted that the land may be sold without notice, and that it is only when you come to make a partition of the proceeds of the sale that the heirs must be notified. The statute prescribes that after notice shall be given the distribution may be made. Now,

if the order of sale is not a part of the proceedings had by the judge in making the distribution, he has no authority to order the sale; and if it is, it can only be done after notice has been given.

In the case of Finch v. Edmonson, 9 Tex. R., 504, it was held that a sale of land by an administrator, made in pursuance of an order of the Probate Court under said 17th section of the act of 1846, although duly confirmed by the court, was void, because a petition was not filed as required by said section. Can there be any less doubt that the notice to the heirs is equally as essential to the jurisdiction of the court as the filing the petition, when, as here, they are both, in equally explicit terms made pre-requisites to the action of the court? When the law requires that notice shall be given to the parties in interest before a judgment or decree shall be pronounced in the Probate Court, is it not as essential to its jurisdiction, as to that of any other tribunal in which notice is required to be given to the adverse party? It has been universally so held. (Cow. & Hill's Notes, part 2, note 42; 1 Scam. R., 322; 4 Id., 127; 4 Peters, 358; 2 Ohio R., 292.).

Where the sale, however, had been properly ordered by the court, the title of the vendee is but a mere equity until it has been confirmed by the Probate Court, (Davis v. Stewart, adm'r., 4 Tex. R., 223,) and unless he obtains a confirmation of it within a reasonable time, it surely must be regarded as vesting in him no interest in the land. (Neill v. Cody, Austin Term, 1862, ante.) These defects would seem to be conclusive against the validity of appellees' title. But aside from them, it is to be remarked that Davis, under whom they claim, had only a bond for title; and it cannot be pretended that the legal title has been divested out of Lockhart's heirs. And under the most favorable view that can be taken of the matter for appellees, it can only be said that the subsequent acts of the administrator in having the land sold, and the acquiescence of the heirs in the sale, if it were shown that they are so situated that their rights can be affected in this manner, would be sufficient to enable them to get a decree of title. Yet, until this has been procured by them, they cannot insist upon appellant's accepting a deed from them, as an execution of the contract on their part.

Littlefield v. Tinsley.

The appellees not having a title to the land sold by them to appellant, the court erred in giving judgment against him.. But the judgment should have been given, if appellant preferred it, rather than accepting such title as appellees could give, canceling the contract and requiring appellees to surrender to appellant the note sued on, and to refund the purchase money previously paid them; and that he should surrender to them their bond for title, and deliver to them possession of the lands. And whether appellant had made valuable and lasting improvements on the land should have been inquired into, and, if so, he was also entitled to compensation for them. Ordinarily it is said, "when a contract for the sale of land, which the purchaser has paid for and was put in possession of, is rescinded for causes free of fraud, the use of the money and the use of the land are held to balance each other;. the decree should, in general, restore the money to the purchaser without interest—the land to the vendor without rents or profits." (Williams v. Rogers, 2 Dana R., 374.) The terms and conditions, however, upon which a recision is had, must in a great degree depend in every case upon its particular facts. We, therefore, deem it unnecessary to protract this opinion by attempting to lay down any authoritative rules upon the subject, which may be found in the future progress of this litigation wholly inapplicable to it. For the error of the court in overruling appellant's exceptions to the proceedings of the Probate Court, and the bond from the administrator of Lockhart's estate, as evidence of title in appellees to the land sold by them to appellant, the judgment is reversed and cause remanded.

Reversed and remanded.